IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ANTHONY R. MAWSON                                                    PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:11cv574-DPJ-FKB

UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER                                                       DEFENDANT

<u>ORDER</u>

This employment dispute is before the Court on Defendant University of Mississippi

Medical Center's (UMMC) Motion for Summary Judgment [33].  Plaintiff Anthony R. Mawson

has responded in opposition.  The Court has considered the memoranda and submissions of the

parties along with the pertinent authorities and finds that Defendant's motion should be granted.

I.      Facts and Procedural History

In their briefs, the parties detail a complex employment history between Anthony

Mawson and UMMC, but for purposes of this Order the Court will provide only a limited review

of the pertinent facts.  Mawson began working as a professor at UMMC in August 2006 under a

one-year, tenure-track employment contract.  This contract, which was formed between Mawson

and the State Board of the Institutions of Higher Learning (IHL), was subsequently renewed for

the 2007–2010 academic years.

Sometime around the end of 2008, Mawson was invited to speak before a legislative

committee of the Mississippi House of Representatives.  His remarks, given in his individual

capacity, were apparently controversial and led to a written complaint to UMMC from the head

of the Mississippi Department of Health.  Around this same time, Mawson's work and his

compliance with UMMC procedures came under increasing criticism.  This included complaints

from Mawson's department chair, Dr. Owen Evans.  Based on Dr. Evans's concerns, Mawson was placed into a Performance Improvement Plan on July 1, 2009, which was intended to remedy concerns about his work quality within the department.

In accordance with IHL policies requiring notice by September 1, UMMC notified Mawson on August 18, 2010, that it would not renew his employment contract the following year.  But in the months after this notice of non-renewal, Mawson allegedly engaged in other troubling conduct that led to a conflict with, and claim of non-sexual harassment from, an assistant at the Center for Research of the Natural Treatment of Disease.  Following the complaint, and based on a determination that Mawson violated UMMC policies with respect to the incident, UMMC initially offered Mawson a separation agreement in lieu of termination. Mawson declined, and his employment was terminated in December 2010.

In August 2011, Mawson filed suit in the First Judicial District of the Circuit Court of Hinds County, Mississippi.  In his Complaint [1-1], Mawson alleged several federal and state-law claims, including First Amendment retaliation, violation of due process, breach of contract, and intentional infliction of emotional distress.  Based on federal questions in Mawson's Complaint, UMMC removed the case to this Court under 28 U.S.C. § 1331.[1]  UMMC later filed this Motion for Summary Judgment [33] on all of Mawson's claims.  Mawson conceded his implied covenant of good faith and fair dealing claim, but otherwise opposed UMMC's motion. Additionally, Mawson has stipulated that the Complaint does not assert a procedural-due-process claim.

---

[1]UMMC's voluntary election of federal jurisdiction amounted to a waiver of sovereign immunity under the Eleventh Amendment.  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002).

II.      Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.

2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.     Analysis

A.     Federal Claims

In his Complaint, Mawson alleges that UMMC violated his First Amendment rights and denied him substantive due process.  As UMMC asserts, and as Mawson concedes in his response, UMMC, as an arm of the state, is not a "person" within the meaning of 42 U.S.C. § 1983, and therefore is not a proper defendant in a § 1983 suit.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (noting that UMMC is an arm of the University of Mississippi, a state agency).  For this reason, Mawson has not pleaded his constitutional claims under § 1983,[2] the traditional, statutory cause of action for redressing constitutional violations committed under color of state law.  Instead, Mawson argues that the Court should imply a right of action directly from the Constitution and allow him to proceed against UMMC on his First Amendment and due process claims.  For the same reasons that District Judge Tom S. Lee rejected Mawson's implied-right-of-action theory in a related case, this Court also rejects those attempts as contrary to basic notions of federalism and the separation of powers, as well as settled Fifth Circuit precedent.  *See Mawson v. Miss. State Dep't of Health*, No. 3:11CV643TSL-MTP, 2012 WL 6084640, at *1 (S.D. Miss. Dec. 6, 2012).

---

[2]Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The Fifth Circuit has "long harbored a great reluctance to allow the pursuit of constitutional causes of action directly." *Mitchell v. City of Hous.*, 57 F. App'x 211, No. 02-20287, 2003 WL 147729, at *1 (5th Cir. Jan. 7, 2003) (unpublished table decision).  "Even the most cursory reading of our case law demonstrates beyond cavil that we have permitted prosecution of such actions directly under the Constitution *only* when necessitated by a total absence of alternative courses and 'no other means' existed to seek 'redress for flagrant violations of the plaintiff's constitutional rights.'" *Berger v. City of New Orleans*, 273 F.3d 1095, No. 01-30200, 2001 WL 1085131, at *1 (5th Cir. Sept. 4, 2001) (unpublished table decision) (quoting *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980)).

Mawson attempts to meet this narrow exception with reference to *Bivens* and its progeny, analogizing UMMC to federal officials who cannot be sued under § 1983.  *See*, *e.g.*, *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  But Mawson offers no relevant authority for holding an arm of the state liable for alleged constitutional violations.  And Mawson's contention that he "has no alternative avenue of redress for his injuries" is simply incorrect.  Pl.'s Mem. [39] at 29.  Mawson could have brought suit against a proper § 1983 defendant.  Therefore Mawson's federal claims should be dismissed as a matter of law.

B.      State-Law Claims

Having eliminated all of Mawson's federal claims, the Court now turns to Mawson's state-law claims against UMMC.  District courts may decline supplemental jurisdiction over "a claim" when all claims over which the court had original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  But while the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims" under such circumstances, the "rule is neither mandatory nor

5

absolute." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quoting

*McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998)).  Rather, the Court must consider

"both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of

judicial economy, convenience, fairness, and comity." *Id.* (citations omitted).  In this case, the

matter has been pending for well over a year, the parties have completed discovery, and

Mississippi law is clear on the remaining state-law issues.  Further, dismissing these claims

without prejudice would result in unnecessary state-court proceedings.  Thus, the *Batiste* factors

weigh in favor of pendent jurisdiction.

       1.      Breach of Contract and Denial of Academic Freedom Rights

In his two contract-based claims, Mawson alleges that UMMC breached his contract of

employment by terminating him without cause and by infringing upon his academic freedom.

"In a breach of contract claim, the plaintiff must prove by a preponderance of evidence: (1) the

existence of a valid and binding contract, (2) the defendant has breached the contract, and (3) the

plaintiff has been damaged monetarily." *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1175

(Miss. Ct. App. 2007) (citing *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)).

Based on a constitutional and statutory grant of authority, the IHL is vested with the

management and control of UMMC—an arm of the University of Mississippi—including "the

power and authority to elect the heads of the various institutions of higher learning, and contract

with all deans, professors and other members of the teaching staff."  Miss. Const. art. VIII,

§ 213A; Miss. Code Ann. § 37-101-15(f).  In addition to hiring, the IHL also retains authority to

terminate professors' employment contracts for "malfeasance, inefficiency, or contumacious

conduct, but never for political reasons."  Miss. Const. art VIII, § 213A; § 37-101-15(f).  Because

of this framework, an employment contract with a state university "cannot exist unless and until the [IHL] approves a nomination by the university's president . . . . [and] this is the only valid avenue for the creation of a valid contract for employment." *Whiting v. Univ. of S. Miss.*, 62 So. 3d 907, 916 (Miss. 2011) (citing *Bruner v. Univ. of S. Miss.*, 501 So. 2d 1113, 1115 (Miss. 1987)).

UMMC does not dispute that Mawson had a valid employment contract with the IHL. UMMC does, however, assert that it is not a party to Mawson's employment contract, and thus is not the proper defendant in Mawson's breach-of-contract action. This position is consistent with Mississippi law. According to the Mississippi Supreme Court, "The university and its officers, notwithstanding the fact that they act as agents of the Board, are not parties to any contract formed between the Board and [a professor]." *Whiting*, 62 So. 3d at 916–17; *see also Bruner*, 501 So. 2d at 1115 ("In respect to public contracts 'where a particular manner of contracting is prescribed, the manner is the measure of power and must be followed to create a valid contract.'" (citations omitted)). And because UMMC is not a party to Mawson's contract, it is "free of liability with respect to whatever contractual obligations [the IHL] may have undertaken with respect [to Mawson]." *Whiting*, 62 So. 3d at 917 (affirming dismissal of breach of contract claim); *see also Nichols v. Univ. of S. Miss.*, 669 F. Supp. 2d 684, 700 (S.D. Miss. 2009) (finding that even if non-tenured professor had a contract that could be breached, the university and its officials were not proper parties in a breach-of-contract suit).

The result is the same under agency principles. *See*, *e.g.*, *Watson v. Johnson Mobile Homes*, 284 F.3d 568, 574 (5th Cir. 2002) ("In a breach of contract action, under Mississippi law, 'agents for a disclosed principal [ ] incur no individual liability, absent fraud or other equivalent

conduct.'" (citation omitted)).  Though Mawson cites several cases to suggest that a non-signatory can be bound by a contract, all of those cases arose in easily distinguishable contexts. Thus, the Court finds that UMMC was not a party to Mawson's employment contract and is not liable for breach of the agreement between Mawson and the IHL.  *Cf. Martin v. Bd. of Insts. of Higher Learning*, 993 So. 2d 833, 836–37 (Miss. Ct. App. 2008) (affirming jury verdict in favor of university golf coach who sued the IHL, not the university, for termination without cause).

Turning then to his academic-freedom argument, Mawson contends that a provision in the faculty handbook recognizing academic freedom is incorporated into his employment contract, and UMMC breached that provision when it terminated Mawson's employment.[3] Given the disclaimer in the handbook that "[t]he contents of this handbook are not and should not be considered, or be construed to be, under any circumstances in part or total an employment agreement with an employee," it is possible the section providing for academic-freedom was not a right owed to Mawson under his IHL employment contract.  Def.'s Reply [42] Ex. A, Faculty & Staff Handbook 3; *see Holland v. Kennedy*, 548 So. 2d 982, 985 (Miss. 1989) ("'[A] written contract can be *modified* by a policy handbook which then becomes part of the contract . . . only where the contract expressly provides that it will be performed in accordance with the policies, rules and regulations of the employer.'" (citation omitted)).  Regardless, UMMC was not a party to the contract and is not liable for breach.  *Whiting*, 62 So. 3d at 916–17.

---

[3]To whatever extent Mawson asserts a federally-protected right to academic freedom—assuming such a right even exists—it fails for the same reasons as the other federal claims.

2.     Intentional Infliction of Emotional Distress

Mawson also alleges intentional infliction of emotional distress, claiming that "Defendant, in particular Dr. Owen Evans, . . . embark[ed] on a course of retaliatory treatment of isolation, hostility, malice and mental abuse to attempt to get Plaintiff to abandon his job."  Pl.'s Compl. [1-1] ¶ 36.  Assuming Mawson's IIED claim could exist in this employment context, the claim is barred by the Mississippi Torts Claims Act (MTCA) because Mawson alleges that UMMC acted with malice.  Under principles of sovereign immunity, the State of Mississippi is immune from suits for "any wrongful or tortious act or omission . . . by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions."  Miss. Code. Ann. § 11-46-3(1).  To a limited extent, the MTCA has waived sovereign immunity for "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ."  Miss. Code. Ann. § 11-46-5(1).  But "a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, *malice*, libel, slander, [or] defamation . . . ."  § 11-46-5(2) (emphasis added).

UMMC, an arm of the University of Mississippi, is an agency of the State of Mississippi and is therefore immune from liability for its torts and torts of its employees except to the extent that immunity has been waived.  Mawson has alleged in his Complaint, and reasserted in his response, that his IIED claim is based upon the "malicious conduct" of UMMC and its agent. Pl.'s Compl. [1-1] ¶¶ 36–37 ("Defendant's actions were intentional and malicious . . . ."); Pl.'s Resp. [39] at 26 ("Plaintiff has alleged that the conduct was intentional and malicious.").  "The

Mississippi Supreme Court has held that torts which require proof of malice as an essential element are excluded from the MTCA under [] section [11-46-5(2)]." *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011) (citing *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So. 3d 672, 688–89 (Miss. 2009)). And although an IIED claim "can be predicated on behavior that is 'malicious, intentional, willful, wanton, grossly careless, indifferent or reckless.'. . . , to the extent intentional infliction of emotional distress is predicated on malicious conduct, the claim would be outside the scope of the MTCA." *Id.* (quoting *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1211 (Miss. 2000)). Based on the allegations in the Complaint, UMMC is immune from Mawson's IIED claim, which is specifically predicated on malice. Although such a claim would not be barred by the MTCA if asserted against an employee of UMMC, here Mawson has not sued an employee of a state agency but the agency itself. Therefore, the Court finds that UMMC should be granted summary judgment on the claim for intentional infliction of emotional distress.

3.    Due Process

Finally, the Court addresses Mawson's allegation that he has been denied due process. Mawson's Complaint alleges that "Defendant's mid-year breach of and non-renewal of Plaintiff's tenure-track employment contract denied Plaintiff's due process rights." Pl.'s Compl. [1-1] ¶ 47. Although Mawson's response stipulates he has not stated a claim for procedural due process, he nonetheless argues that "his non-renewal placed a 'stigma' on his reputation and interfered with is ability to obtain employment," resulting in a denial of substantive due process. Pl.'s Resp. [39] at 34. While Mawson cannot pursue a federal claim for due process for reasons discussed above, it remains unclear if Mawson pleaded a claim for due process under both the

10

Mississippi and United States Constitutions. And although the Court is skeptical that the liberty-interest claim has been adequately pleaded, the parties have briefed the issue and the Court will address the arguments under Mississippi's due process clause.

Under the Mississippi Constitution, "[n]o person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. art. III, § 14. This promise of due process is coextensive with the guarantees found in the United States Constitution. *Sec'y of State v. Wiesenberg*, 633 So. 2d 983, 996 (Miss. 1994) ("The due process required by the Federal Constitution is the same due process required by the Mississippi Constitution." (citing *Miss. Power Co. v. Goudy*, 459 So. 2d 257, 275 (Miss. 1984))). The first step in analyzing a due process claim is to identify a protected property or liberty interest. *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 985 (Miss. 2004) (citing *Bluitt v. Hous. Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 731 (S.D. Tex. 2002)). Mawson, who was a non-tenured professor, does not assert that UMMC has deprived him of a property interest, nor does it appear that he could. *See Whiting*, 62 So. 3d at 915 ("It is settled law in this state that the subjective expectation of tenure does not create a property interest that is guaranteed by the right to substantive and procedural due process." (citing *Wicks v. Miss. Valley State Univ.*, 536 So. 2d 20 (Miss. 1988)).[4] Thus, the Court turns to Mawson's claim that he has been denied a protected liberty interest.

The Mississippi Supreme Court has recognized a protected liberty interest where "(1) the alleged injury occurred in either a discharge or re-hiring process of a public employee; (2) the alleged injury is related to one's reputation; and (3) the injury to the employee's reputation is

---

[4]Nor does Mawson assert that the termination of his employment mid-contract resulted in deprivation of a property interest.

11

coupled with an interest in other employment opportunities that will be foreclosed as the result of arbitrary and capricious governmental action." *Hall v. Bd. of Trs. of State Insts. of Higher Learning*, 712 So. 2d 312, 322 (Miss. 1998).[5] But a protected liberty interest is not affected unless "an employee is discharged in a manner that creates a false and defamatory impression which stigmatizes [him] . . . . [and] the employee . . . show[s] that the governmental agency has made the stigmatizing charges public in any official or intentional manner, other than in connection with the defense of related legal action." *Id.* (citing *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984)) (other citations omitted). "Moreover, for a charge to be stigmatizing, it must be worse than merely adverse; it must be such as to give rise to a badge of infamy, public scorn, or the like." *Id.* (citation and quotations omitted).

The Court need address only the publication aspect of Mawson's liberty-interest due-process claim. Mawson has neither asserted nor provided any facts to suggest that UMMC ever publicized the termination of Mawson's employment or the reasons for it. In fact, by his own admission, Mawson's prospective employers lost interest in hiring him when he personally disclosed the reason for his departure from UMMC. Pl.'s Resp. [38] Ex. 4, A. Mawson Decl. ¶ 47. In the absence of a genuine dispute that UMMC did not publicize the termination of Mawson's employment, UMMC is entitled to summary judgment on Mawson's substantive due process claim.

---

[5]Similarly, under the Due Process Clause of the Fourteenth Amendment, a public employee "'terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to his standing or reputation in his community or [ ] terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) he was denied other employment opportunities as a result,'" has been deprived a protected liberty interest. *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 347 (5th Cir. 2006) (alteration in original) (quoting *Cabrol v. Town of Youngsville*, 106 F.3d 101, 107 (5th Cir. 1997)).

    C.      Relief Sought in Plaintiff's Response

    In his response, Mawson alternatively requested leave to amend his First-Amendment and state-law contract claims to add new defendants not previously named in this action.  That request is procedurally improper.  First, it fails to comply with Local Uniform Civil Rule 7(b)(3)(C), which states:  "A response to a motion may not include a counter-motion in the same document."  Second, even if raised in a motion, the motion would be untimely because the deadline to amend the pleadings and add parties passed more than one year ago and the case is set for pretrial conference in less than two months.  Finally, Mawson's proposed amendments adding new parties would not affect the dismissal of UMMC, which has shown it is entitled to summary judgment at this time.

IV.     Conclusion

    The Court has considered all of the parties' arguments.  Those not addressed would not change the result.  For the reasons stated, UMMC's Motion for Summary Judgment [33] is granted.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

    **SO ORDERED AND ADJUDGED** this the 20th day of December, 2012.

                                    s/ *Daniel P. Jordan III*
                                    UNITED STATES DISTRICT JUDGE

13